BANK OF THE UNITED STATES, (COOTE v.) See Cases Nos. 3,203 and 3,204.

---

## Case No. 912.

### BANK OF THE UNITED STATES v. CORCORAN.

[3 Cranch, C. C. 46.][1]

Circuit Court, District of Columbia. Dec. Term, 1826.[2]

NEGOTIABLE INSTRUMENTS — NOTICE TO INDORSER — EVIDENCE — AGREEMENT NOT TO PLEAD LIMITATIONS.

1. Notice left at the shop of the indorser's son, is not sufficient to charge him, although the shop was in a room of the house in which the indorser resided; the entrance into the shop being separate from that into the dwelling-house; the indorser having no concern in his son's business, and, being postmaster, and having a separate office in which he transacted

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 2 Pet. (27 U. S.) 121.]

his public and private business, and the son having a separate dwelling-house.

[See note at end of case.]

2. An agreement by the indorser not to take advantage of the statute of limitations, and to authorize an attorney to agree to docket a suit upon the note, is not evidence from which the jury can infer that the indorser received due notice.

[See note at end of case.]

At law. Assumpsit against [Thomas Corcoran] the defendant as indorser of Daniel Reintzel's note, for $3,700. [Judgment for defendant. This was subsequently affirmed by the supreme court in Bank of U. S. v. Corcoran, 2 Pet. (27 U. S.) 121.]

The notice for the defendant was left at the shop of the defendant's son, kept in the dwelling-house of the defendant, but having a separate entrance, and unconnected with the part occupied by the defendant.

The defendant had no concern with the shop, and the son had a separate dwelling-house. The defendant was postmaster, and kept an office in which he transacted his private business as well as his public. The notary had been in the habit of leaving notices for the defendant at the shop of the defendant's son; but there was no evidence that the defendant had authorized, or acquiesced in, such notices so to be left.

THE COURT (THRUSTON, Circuit Judge, contra) instructed the jury that such notice, so left, was not sufficient to charge the defendant.

Mr. Key, for the plaintiff, then prayed the court to instruct the jury in effect, that if they should be satisfied by the evidence that notice had been duly received by the defendant, although it was so left, the notice was sufficient; and that the two papers (hereafter mentioned), were evidence from which the jury might infer such notice. The papers were, first, an agreement not to take advantage of the statute of limitations; and, second, a promise to authorize counsel to docket a suit upon the note.

But THE COURT (THRUSTON, Circuit Judge, contra) refused to give the instruction, because they thought the papers did not warrant such an inference.

Bills of exception were taken, and upon the writ of error, the judgment was affirmed by the supreme court of the United States upon both points. 2 Pet. [27 U. S.] 121.

[NOTE. Mr. Justice Washington, in delivering the affirming opinion,—Bank of U. S. v. Corcoran, 2 Pet. (27 U. S.) 121,—said:

["It seems from the evidence that the store never was, at any period, the place appointed for the delivery of notices or any other communications to the defendant. But, if it had been, the note in question came to maturity some time in the month of July, 1819, and the proof was, that the defendant took charge of the postoffice some time in the year of 1818, after which that became the place at which notices and other communications to him were usually left, and where he transacted both his private and public business. Were it to be admitted that the service of a notice at a place not appointed by the defendant as the one at which

notices to him were to be delivered would be sufficient in law to charge him, upon the ground that other notices had been previously left at the same place, it would surely be too extravagant to contend that a service at the same place would be legal, after another place had been appointed for that purpose, and where they had in point of fact been usually left.

["Let us now see what were the papers which the plaintiffs had given in evidence, which the court were called upon to declare to the jury were competent evidence from which the jury might make the inference insisted upon: The first is the letter of the defendant, dated the 8th of May, 1822, and addressed to the cashier of the Bank of Columbia, in which he declares that he will not take any advantage of the limitation act for his indorsement on this and another note; the blank authority sent to the defendant by the cashier of the Bank of the United States on the 14th of December, 1824, for the signatures of the defendant and of the maker of the notes, purporting to empower some attorney to docket suits against them on these notes, with a declaration indorsed thereon by the defendant that if the maker of the notes should not be able to satisfy the bank before court, and they should determine to bring suit, he would instruct a particular person to docket the case for him. Let it be admitted that these papers bound the defendant to abstain from making a particular defense to which the law entitled him, and to cause the action intended to be commenced against him to be docketed, so as not to delay the plaintiffs, could the jury from thence infer, with any legal propriety, either that the necessity of proving notice of the nonpayment of the notes would be dispensed with, or the fact that the notice left at the store of James Corcoran was received by the defendant at any time, much less in due time? If this was a question of inference fit to be submitted to the discretion of the jury, it seems to the court that the rules respecting this subject which have been laid down with so much care would no longer be fixed and certain, but would change with the varying conclusions which a jury might draw of the fact from evidence, however slight, given to prove it. What, for example, does the rule that notice must in certain cases be served personally upon the indorser, or be left at his dwelling house or place of business, signify, if a jury may from any evidence, however remote from the fact, presume that the notice, though left at any other place, might have found its way to the hands of the person whom it was intended to charge?"]